## Margaret A. McMahill

*v.*

## Estate of William McMahill.

*Filed at Ottawa March 24, 1885.*

1. WIDOW'S AWARD—*of the conditions on which it rests—and rights of widow concerning it.* The widow's award given by section 74, chapter 3, of the Revised Statutes, does not depend upon her having a family. She is entitled to more, however, if she has a family, and the amount is graduated according to the size of the family; but the award, whatever may be its amount, belongs to the widow as her sole and exclusive property, and this being so, she may release her award by accepting another provision in lieu of the same.

2. SAME—*how affected by an ante-nuptial agreement providing for an allowance in lieu thereof.* Two persons, just before their marriage, entered into an ante-nuptial agreement that neither one should have any interest in the property of the other, except that the wife, and her two children by a former marriage, were to be supported, the contract providing, however, that if the wife should survive the husband she should be entitled to $1000 from his estate, in lieu of dower, homestead, widow's award, and share in his estate of every kind and nature, and nothing more. After the husband's death she accepted the $1000: *Held*, that she was not entitled to any set-off of a widow's award.

3. SAME—*former decision distinguished.* In *Phelps* v. *Phelps*, 72 Ill. 545, it was held that a widow's award in her husband's estate could not be barred by an ante-nuptial contract. This was based upon the ground of his legal liability to support his wife and children; but the reason of the rule in that case fails when the husband dies leaving no child having any legal claim on him for support, and these cases are in that regard to be distinguished.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Warren county; the Hon. John J. Glenn, Judge, presiding.

Messrs. Porter & Porter, for the appellant:

The law providing for a widow's award is an "exemption" law, and should be liberally construed. Const. 1870, art. 4, sec. 32; *Race* v. *Oldridge*, 90 Ill. 250; *Recht* v. *Kelly*, 82 id. 147; *Phelps* v. *Phelps*, 72 id. 545.

Taking this case as it appears from the record, we maintain that the law cast this property on the widow for the benefit of herself and her family, and that any attempt to waive it by an executory contract is contrary to public policy, and therefore inoperative, and should not be enforced. *Recht* v. *Kelly,* 82 Ill. 149.

We think we may arrive at the same conclusion in either of two different ways: First, by considering her as left the head of his family; or, second, considering her as left the head of her own family. On the first point we say, that by taking her children into his family, according to the terms of the contract they stood in the relation of children to him, and he, thus standing *in loco parentis,* became subject to the same duties towards them as towards his own children, so long as they remained in his family. 2 Kent's Com. 192; Reeve on Domestic Relations, 416, note.

On the principles laid down in *Strawn* v. *Strawn,* 53 Ill. 263, the children certainly come within the meaning of the word "family." In that case the court held that the word "family" included "a young woman raised in the family," a "housekeeper," a "cook," a "man-servant," and a "man who acted as superintendent of a farm." As to what constitutes a family, see Thompson on Homesteads, secs. 44, 45; *Race* v. *Oldridge,* 90 Ill. 250.

*Brenner* v. *Gauch,* 85 Ill. 368, is a case where an antenuptial agreement was set up as a bar to the widow's award. There is no statement showing that the widow was left the head of any family whatever. The inference fairly is that she was not, and there is nothing settled in the case except merely that the execution of the contract did not affect her right to the "award" until the consideration was received. It might as well be claimed that this latter case overruled *Phelps* v. *Phelps* or *Recht* v. *Kelly,* as that it settled this case, or affected it in any manner. The matter is fully discussed

in Thompson on Homesteads and Exemptions, chap. 2, sec. 53, *et seq.*

That courts have always held that exemption laws should be liberally construed, is also plain, but we append a few authorities on that point: *Leavitt* v. *Metcalf*, 2 Ver. 342; *Dow* v. *Smith*, 7 id. 465; *Hall* v. *Sutherland*, 14 Barb. 459; *Allen* v. *Cook*, 26 id. 379.

Messrs. STUART & STUART, and Mr. R. J. GRIER, for the appellees:

The part of said award allowing the widow $100 for family pictures, jewels, etc., is expressly forbidden by the statutes of this State. For these reasons this widow's award would have to be set aside, as the court has no power to modify it. *Marshall* v. *Rose*, 86 Ill. 374.

The appellant in this case is not entitled to any award on account of the ante-nuptial agreement entered into between her and the said William McMahill, deceased, in which it is clearly set forth that if appellant survives the said William McMahill, "she shall be entitled to $1000 in cash from the estate of the said William McMahill, in lieu of dower, homestead, widow's award, and share in his estate of whatever kind or nature, and no more."

Ante-nuptial agreements in regard to property rights have received the repeated sanction of the courts of this State. *Phelps* v. *Phelps*, 72 Ill. 545; *Jordan* v. *Clark*, 81 id. 465; *McGee* v. *McGee*, 91 id. 548.

Ante-nuptial agreements are to be construed liberally for the purposes which they are intended to accomplish. *Phelps* v. *Phelps*, 72 Ill. 546.

Not only has this ante-nuptial agreement been decreed by the courts to be valid and binding on appellant, but she has accepted the $1000, with interest, and thereby she is effectually estopped. *Brenner* v. *Gauch*, 85 Ill. 368; *Cowdry* v. *Hitchcock*, 103 id. 262.

A step-father, by the laws of this State, is under no legal obligation to support his wife's children by a former marriage, even while he and they are both living.  *Bond* v. *Lockwood*, 33 Ill. 212; *Altridge* v. *Billings*, 57 id. 489.

Mr. Justice Sheldon delivered the opinion of the Court:

This is an appeal from a judgment of the Appellate Court for the Second District, affirming a judgment of disallowance of a "widow's award," rendered by the circuit court. The facts in the case were agreed upon by the parties, and are as follows:

Margaret A. McMahill, the appellant, on October 7, 1879, being a widow, named Margaret Kelly, entered into an agreement in writing with William McMahill, he being a widower, at which time they each had both real and personal property, and each had children by former marriage, his being all of age, not residing with him; her two children, both minors, were residing with her, aged, respectively, twelve and fourteen years. The agreement was as follows:

"This indenture, made and entered into by and between Rev. William McMahill, of one part, and Margaret Kelly, of the other part, both of the county of Warren, in the State of Illinois: Witnesseth, that in consideration of a marriage about to be entered into by and between the said parties, it is agreed that neither party shall, by reason of said marriage, have any right, title or interest in the property of the other during their joint lives, nor afterwards, except that the said Margaret shall live with the said William with her two children, and be supported by him. William is to instruct said children while they stay with him, as a father, and not charge them anything, nor shall there be any charge for the labor of said children. In case the said Margaret survives the said William, she shall be entitled to $1000 in cash from the estate of the said William McMahill, in lieu of dower, home-

stead, widow's award, and share in his estate of whatever kind or nature, and no more.

"Witness our hands and seals, this 7th day of October, A. D. 1879.          William McMahill, [Seal.]

Margaret A. Kelly. [Seal.]"

The parties were married on the 7th day of October, 1879, after the making of said contract. They lived together, and the wife's two children with them, till June, 1881, when William McMahill died, leaving her, his widow, and eight children, his heirs, by his former marriage, all of age, and residing away from his home. There was no child born of the marriage between appellant and the deceased. Both her children by her former marriage lived with them from the time of their said marriage, and had been kept by him according to the contract, and resided with them at the time of his death. The appraisers of the estate estimated the value of the specific articles of personal property allowed by the statute to the widow, and known as the widow's award, at $1279.50. The county court disallowed the widow's award, and the order of disallowance was affirmed by the circuit and Appellate courts. After the decease of William McMahill, appellant accepted from his heirs the $1000 named in the written contract. The only question presented by the record is, whether the widow was barred of her widow's award in the estate by reason of her ante-nuptial agreement.

This same contract was before this court in the case of *McMahill* v. *McMahill,* 105 Ill. 596, on the question whether it was a bar of the homestead right, and it was held not to be, for the reason that the homestead right could only be extinguished in the mode provided by the statute, and that an ante-nuptial agreement was not such a mode.

In *Phelps* v. *Phelps,* 72 Ill. 545, where the decedent left a widow, and a minor child of his own, it was held that an ante-nuptial agreement would not bar the widow's award, because

30—113 Ill.

the latter was a statutory provision charging the husband's estate with the support of his widow and his children residing with her, for the period of one year after his death, (one item thereof being, "provisions for herself and family for one year,") and one of which the husband could not deprive his wife and children no more than he could release himself of his obligation to support them while living. It was the legal obligation for the support of his own children, which he could not defeat. But in the present case there are no children of the decedent left with the widow. The two children are those of another,—of the widow and another husband. They are strangers, as regards maintenance, to the decedent, upon whom the law imposed no obligation for their support. As was said by this court in *Brush* v. *Blanchard*, 18 Ill. 47: "The husband is not, from the fact of marriage with the mother of minor children, bound to support them. As to him, so far as any obligation arising out of the marriage is concerned, they are strangers. He is not entitled to their custody or labor, nor is he bound to provide for them." All of obligation there was upon the decedent for the support of these children was a contract obligation, and that terminated with his life. After his death, whatever of charge there may be supposed to be upon his estate for the support of any minor children, we regard as limited to his own children, where there was the legal obligation of support, and as not extending to the children of another.

Much stress is laid upon the use of the word "family," in the provision as to the widow's award, and urging that it is the widow and family to whom the award is given, and that it matters not whether the family be that of the decedent or of the widow. So far as there may be deemed any obligation of support, we think it confined to the decedent's own family. These children, though in his family, were not a part of his family proper,—they were there under and in pursuance of a contract that the decedent should support them there while

he lived.   The legal obligation for their support was upon their mother, and there was where such obligation rested after decedent's death.

The public policy is dwelt upon of the maintaining of such a provision for the support of minor children in their helplessness.   Anything of public policy in this respect we think is satisfied by making the burden for support to follow legal obligation in that regard, without requiring that the property of a decedent shall be diverted from his creditors and his own children, and go for the support of another person's children. Section 74, chapter 3, of the statute, allowing said award to the widow, says it shall be "her sole and exclusive property forever," and it applies to any widow.   She need not have any family to get the award, but she is to receive more if she has a family, and the amount is graduated according to the size of the family; but the award, whatever may be the amount, belongs to the widow as her sole and exclusive property.

We regard the widow's award, here, as exclusively her own property, as for the benefit of herself, and to aid her in the support of her own children, of whom she is the natural supporter, and that it was within her competency to release the award, as she did, by her ante-nuptial agreement; that such release would not be in interference with any supposed legal obligation or burden which the statute imposes upon the husband or his property for the support of his minor children, or with any imagined public policy.   Besides, after the right to the widow's award in this case had accrued, and the specific articles thereof had been designated and appraised, appellant accepted the $1000 which the ante-nuptial agreement expressly declared should be in lieu of dower, homestead, widow's award, and share in decedent's estate of whatever kind or nature.   At that time the award was the sole and exclusive property of the widow, declared by the statute so to be.   She had the full power of sale and disposition of it,

and we are of opinion her acceptance of the $1000 should be viewed as having the same effect as if she had then made a sale of the articles embraced in the award, and received the purchase money therefor. See *Weaver* v. *Weaver*, 109 Ill. 225.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. Justice Scott, dissenting:

When a case between these same parties was before this court at a former term, it was held the ante-nuptial agreement between the decedent and his surviving widow did not bar or cut off her right of homestead in the premises on which she and her husband resided after their marriage. That was all the question that was then decided by the court. (*McMahill* v. *McMahill*, 105 Ill. 596.) The question now presented is, whether the ante-nuptial contract bars the widow's award. I am of opinion it does not. It has been frequently held by this court the widow's award is for the benefit of the widow and the family, and that the policy of the law forbids the parties releasing the same by ante-nuptial agreement. *Phelps* v. *Phelps*, 72 Ill. 545, *McGee* v. *McGee*, 91 id. 548, and other cases.

It appears from the stipulation in the record, that in the former suit commenced by the heirs of the decedent for partition of the land of which he died seized, the decree denied the widow's right to homestead and dower in the lands, by reason of the ante-nuptial agreement; that the heirs brought into court the $1000 mentioned in that contract, and tendered the same to the widow, and that after the circuit court decided she was barred of dower by the provisions of the agreement, but not of homestead, she accepted the $1000 so tendered, and receipted to the clerk of the court for the same. It is now insisted the acceptance of the $1000 as tendered in the former suit, bars the widow's award, as well as her dower in the lands of her deceased husband. It is conceded if there

had been children by the marriage of the parties, that under the decision of this court in *Phelps* v. *Phelps*, the ante-nuptial agreement would have constituted no bar to the widow's award. The objection in this case runs on the ground the widow had no family residing with her at the time of her husband's death, whom he was under any obligation to support. That, it is thought, is a misapprehension of the facts of the case. It is true that all of decedent's children by his former marriage were of age, and none of them resided with him at the time of his death, and it is also true he had no children by his marriage with claimant in this case; but it appears the widow had two children by a former marriage residing with her, and constituting a part of her husband's family at the time of his death,—one twelve and the other fourteen years of age. Under the decision of this court in *Race* v. *Oldridge*, 90 Ill. 250, these children constituted a part of the family of decedent. *Strawn* v. *Strawn*, 53 Ill. 263.

But it is said he was under no obligation to support these minor children of his wife by her former marriage, although they did in fact constitute a part of his family, and hence, it is said, the case is not within the principle of *Phelps* v. *Phelps*, and other cases in this court. That is not true, either in law or fact. It is recited in the ante-nuptial agreement: "That neither party shall, by reason of said marriage, have any right, title or interest in the property of the other during their joint lives, nor afterwards, except that the said Margaret shall live with the said William with her two children, and be supported by him. William is to instruct said children while they stay with him, as a father, and not charge them anything, nor shall there be any charge for the labor of said children." This is an absolute undertaking on the part of the decedent to make the children of claimant residing with them, members of his family. He assumed to them the relation of a father, and in consideration no charge was to be made for their labor he obligated himself to give them support and

instruction without charge. What more could he do to make them members of his family as they would have been had they been his own children? By the ante-nuptial agreement he assumed the same relation to them the law imposed upon him in regard to his own children residing with him. These children had arrived at the ages, respectively, of twelve and fourteen years,—an age when they might be expected to render services in the family, of which decedent had the benefit, of very considerable value; and especially would that be true if he had lived until they had become of age. In that event it would have been a favorable contract for him. But whether the services were of much or little value, such services were a sufficient consideration for the undertaking of decedent to make them members of his family, and entitle them to the same support and instruction that his own children would be at his hands. The claimant here surrendered to her husband all benefits of the labor of her minor children, in consideration they should be made members of his family, and receive from him support and instruction such as a father would give his own children, and now that he had the benefit of that contract during his lifetime, it is but just his estate should bear the burden of it. The other heirs have no just ground for complaint. It was a contract the decedent could lawfully make, and one the policy of the law favors. Assuming, then, as ought to be done, the minor children of claimant were members of decedent's family, and still resided with her, she is clearly entitled to the widow's award, precisely in the same way as she would have been had there been minor children of herself and late husband. No just distinction can be taken.

The judgment, in my opinion, ought to be reversed.